UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 24-cr-0285 (BAH) |
| : | |
| WILLIAM IRVIN FULLER, : | |
| : | |
| Defendant. : | |

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. William Irvin Fuller has pleaded guilty to two second-degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three of the information) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Four of the information). For the reasons set forth herein, the government requests that this Court sentence Fuller to 30 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.      Introduction

Defendant William Irvin Fuller participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

1

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

30 days' incarceration is warranted because Fuller: (1) observed rioters breaking the windows of the Senate Wing doors; (2) breached the Capitol through a broken window, demonstrating his knowledge of additional property destruction committed by the rioters; (3) posted on Facebook video that he took of rioters breaching the Capitol through the Senate Parliamentarian Door; (4) told a friend, in Facebook messenger, "Fuck yea I went in," said, "I'm glad I went," and added that he saw "people pushing the cops," and that police "didn't do much" because they were "outnumbered"; (5) despite remaining inside for only two minutes, told a friend that he would have stayed longer if he didn't have an open case; and (6) lied to the FBI when they asked him about his involvement in the riot.

The Court must also consider that Fuller's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

so many others, the riot likely would have failed. Here, the facts and circumstances of Fuller's crime support a sentence of 30 days' incarceration and 36 months' probation in this case.

## II.    Factual and Procedural Background

### a.    The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense, paragraphs 1-7.

### b.    Fuller's Role in the January 6, 2021 Attack on the Capitol

On January 6, 2021, Fuller traveled to Washington, DC with Samuel Christopher Fox. Fuller was staying with Fox at the time and had worked for him in the past. [2]

Fuller attended the Stop the Steal Rally on the National Mall, accompanied by Fox. Fuller carried a sign that read, "Thank you! President Trump / We Love You".

---

[2] On November 5, 2021, Fox pleaded guilty before this Court to one count of violating 40 U.S.C. § 5104(e)(2)(G). *See United States v. Samuel Christopher Fox*, D.D.C. 1:21-cr-00435-BAH, Minute Entry of November 5, 2021. On April 5, 2022, this Court sentenced Fox to 36 months' probation and 90 days' home confinement. Minute Entry of April 5, 2022.



***Image 1:*** *screenshot from open-source video showing Fuller (circled in yellow) at the Stop the Steal Rally. Fox stands to his left, in a red bandana.*

At approximately 3:12 p.m., Fox and Fuller entered the U.S. Capitol through a broken window next to the Senate Wing Doors. As Fuller entered, he pulled up a Covid-19 mask over the lower part of his face.



***Image 2 and 3:*** *screenshots from U.S. Capitol Surveillance footage. Fuller (circled in yellow) enters the U.S. Capitol. Fox stands in front of him, in a red bandana.*

Fox and Fuller remained inside the Capitol building for approximately one minute, before leaving through the Senate Wing Door.



***Image 5:*** *screenshot from U.S. Capitol Surveillance footage. Fuller (circled in yellow) leaves the U.S. Capitol.*



***Image 6 and 7:*** *screenshots from open-source video showing Fuller (circled in yellow) in the arcade of the Senate Wing Doors. In Image 6, Fox stands behind Fuller, in a red bandana.*

After leaving, Fuller and Fox stood on the stairs to the Senate Parliamentarian Door and Fuller used his phone to film rioters as they entered the door.



***Image 8:*** *screenshot from open-source video showing Fuller (circled in yellow) filming at the Senate Parliamentarian Door.*

    c.   **Fuller's Social Media Posts and Communications about January 6**

After the attack on the Capitol, Fuller used Facebook to celebrate his participation in the riot. Fuller admitted on Facebook to having gone into the Capitol, and to knowing the police were outnumbered and had been assaulted by other rioters. A selection of Fuller's statements on Facebook relating to his participation in the riot are summarized below.

On January 6, 2021, at 7:21 p.m.,[3] another Facebook user sent a private message to Fuller, saying, "I seen u was there did u storm the building you goffy fucker" [sic]. At 7:28 p.m., Fuller

---

[3] Times are converted from UTC.

replied, "Fuck yea I went in . . . I climbed the wall." The other Facebook user asked, "U get gassed" [sic], and Fuller responded by sending a video, which showed rioters entering the Senate Parliamentarian Door. Fuller then commented, "Yea and almost got hit with rubber balls . . . That's right before I walked in". The other user responded, "Your nuts" [sic], and Fuller replied, "Haha maybe just a little lol".

The other Facebook user said, "Lucky u didn't get smacked by a cop . . . Or arrested", and Fuller replied, "Ha they didnt do much they was outnumbered . . . They pushed us out once and we pushed right back in . . . I'm glad I went and I smoke a joint in side[4] who else can say they smoked a joint in the capital . . . If I didnt have charges pending I would of probably stayed longer" [sic].[5]

The other Facebook user asked Fuller, "Was there any violence", and Fuller replied "Yea someone got shot inside . . . A girl". The other Facebook user asked "Other than that . . . Like fist fights", and Fuller replied "No just people pushing the cops . . . No but that's about it it was all trump supporters . . . I went down to fight some antifa but they wasnt even there" [sic]. Fuller said, "We will take over Republic . . . Take the trash out" [sic].

On January 7, 2021, on Facebook, Fuller commented on photos of the Capitol on January 6, 2021, posted by another Facebook user: "You guys make it in". The other user responded, "Will

---

[4] The Government is not aware of any evidence that Fuller actually smoked marijuana inside the Capitol. While in the Senate Wing Corridor, Fuller never left the area covered by surveillance cameras and did not appear to smoke anything.

[5] On January 6, Fuller was subject to criminal charges following a 2019 arrest for disorderly conduct and a 2020 arrest for simple assault. PSR ¶ 49.

Fuller we were the last push that broke the line got close to the door then maced terribly and had to stop for a minute by the wall.  Everybody got in tho !!!" [sic].  Fuller replied, "we got in I was up there when they first got in" [sic].  Fuller then posted a video of the Senate Parliamentarian Door.  A third Facebook user replied:

> I love seeing people I knew as kids grow up to be involved, brave and willing to stand for something.  I wish I could have been there with you, I really do.  Everyone sits on one side of a screen and types up comments of opinions with hate and ignorance in every argument, and I don't give a rats at WHAT side of the fence your one here, but I'm PROUD to know a few people who got off the couch and went and stood for what THEY believe in!  THATS the America I want to raise my kids in. . . . Will, Thank you!  I really mean that

[sic].

### d. Fuller's Interview with the FBI

On July 14, 2021, Special Agent Michael Punzo of the FBI interviewed Fuller by telephone.  Fuller said that he was at the Capitol on January 6, 2021.  Fuller said that he "had no choice but to go in [the direction of the Capitol] because [he was] in the middle of the crowd and being pushed."  Fuller said that he "saw people acting crazy," and "saw police officers but no one stopped him from walking toward the building or told him to leave."

Fuller lied that he did not go inside the Capitol Building.  Fuller said that he only got to the "edge of the front yard," and that "he did not go up the steps," and "[e]ven if he wanted to go up the steps he would not have been able to because there were too many people."  Fuller estimated that he was "about 30 yards from the building," and said that he "could not actually see people breaking into the Capitol."

### e. The Charges and Plea Agreement

On June 11, 2024, the United States charged Fuller by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G).  On August 2,

2024, pursuant to a plea agreement, Fuller pleaded guilty to Counts Three and Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). By plea agreement, Fuller agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Fuller now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). As noted by the plea agreement and the U.S. Probation Office, Fuller faces up to six months of imprisonment and a fine of up to $5,000. Fuller must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to them. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

Fuller has pleaded guilty to a pair of Class B misdemeanors, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. In this Class B misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days' incarceration on Count Three and 36 months' probation on Count Four, and 60 hours of community service.

### a. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Fuller's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Fuller, the absence of violent or destructive acts is not a mitigating factor. Had Fuller engaged in such conduct, he would have faced additional criminal charges.

The important factors affecting sentencing in Fuller's case include his false statements to the FBI that he was not inside the Capitol, his knowledge that the Capitol had been stormed, based on his climbing through a broken window at the Senate Wing Door and his observation of rioters entering through the Parliamentarian Door, his statements indicating clear awareness that the riot had overwhelmed police lines when he entered the Capitol, and the active criminal charges against him at the time of his entry into the Capitol.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### b. Fuller's History and Characteristics

As set forth in the PSR, Fuller's criminal history consists of arrests in 2019 for disorderly conduct, in 2020 for simple assault, and 2022 for simple assault. PSR ¶ 46-47, 49. Fuller was arrested eleven times for public drunkenness, driving without a valid license, fighting, and driving without a valid inspection. PSR ¶ 29, 31-40, 42, 45-47, 49. While Fuller has not been convicted

of any crime and the charges in each of these three cases were voluntarily dismissed by the Commonwealth of Pennsylvania, this pattern of arrests shows a general disrespect for the law. Furthermore, Fuller's Facebook messages show that he would have stayed inside the Capitol for a longer time but for his pending charges: "If I didnt have charges pending I would of probably stayed longer" [sic].

### c. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### d. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

#### 1. General Deterrence

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

  2. *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of some incarceration.

First, as discussed above, Fuller's history of arrests reveals a clear pattern of disrespect for the law. *See* Section IV(b) *supra*. Even after being arrested for disorderly conduct and assault charges, *see* PSR ¶ 46-47, 49, he was not meaningfully deterred from committing much more serious crimes on January 6.

Second, although Fuller accepted responsibility by stipulating to all of the facts underlying his guilt and resolving his case via a plea, his post-January 6 statements are troubling.

Fuller exulted in his criminal conduct on January 6. When Fuller posted publicly and unapologetically about his actions on January 6, 2021, he received praise from other Facebook users, who said "I'm PROUD to know a few people who got off the couch and went and stood for what THEY believe in!  THATS the America I want to raise my kids in. . . . Will, Thank you!"  In private messages after he left the Capitol, Fuller stated that he was "glad I went," and when asked if he went into the Capitol, he stated, "Fuck yea I went in."

Fuller has accepted responsibility by pleading guilty. But neither the government's evidence nor the PSR show any degree of regret or remorse for his conduct beyond that guilty

13

plea. The Court should view any remorse Fuller expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Fuller invaded the Capitol, boasted it afterward, and was praised for his role in the events of that day. With the 2024 presidential election approaching, a rematch on the horizon, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Fuller in a manner sufficient to deter him specifically, and others generally, from going down that road again.

### e. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[6] This Court must sentence Fuller based on his own

---

[6] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

The sentencing factors set forth in 18 U.S.C. § 3553(a) include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6). Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

1. *United States v. Samuel Christopher Fox, 1:21-cr-00435-BAH*

First and foremost, *United States v. Samuel Christopher Fox*, 1:21-cr-00435-BAH, is the most similar to Fuller's case, in terms of conduct at the Capitol. Fuller traveled to DC with Fox, entered the restricted area around the Capitol with Fox, entered the Capitol through a broken window next to the Senate Wing Door with Fox, left the Capitol through the Senate Wing Door with Fox, and finally observed the breach of the Parliamentarian Door with Fox. Fox pleaded guilty to a single count of violating 40 U.S.C. § 5104(e)(2)(G). This Court sentenced Fox to 36 months' probation.

Fox's conduct at the Capitol was virtually identical to Fuller's—Fox and Fuller were together for all pertinent moments on Capitol grounds, saw the same sights, entered through the same broken window, and remained inside for the same amount of time. Furthermore, Fox's discussion of the riot on social media is similarly troubling: Fox spread misinformation on social media, while Fuller's statements on Facebook were generally accurate, but both expressed pride in their actions at the Capitol, and both received praise from other users.

15

Some of the aggravating factors in Fox's case are not present in Fuller's. Fox organized the trip to DC, called for a civil war, and had a history of being on probation before January 6.

However, some of the aggravating factors in Fuller's case were not present in Fox's. Fox gave a full and generally accurate recounting of his activities to the FBI, while Fuller lied to the FBI by claiming that he did not go into the Capitol building, and falsely described the reasons why he was not able to enter the building. While Fox had a criminal history and had been on probation at a point twelve years ago, Fuller had two open cases at the time of his conduct at the Capitol. Finally, while Fox claimed a phone call from a family member as his reason for leaving the Capitol, Fuller specifically cited his open cases as his reason for not staying in the Capitol longer.

2. United States v. Chadwick Gordon Clifton, *1:22-CR-00182-BAH*

*United States v. Chadwick Gordon Clifton*, 1:22-CR-00182-BAH, is an appropriate comparator with this case. Similarly to Fuller, Clifton boastfully exclaimed—after making it past the violent altercations—that he "broke[] past the barrier . . . [and] the policemen have been overwhelmed!" Like Fuller, Clifton recorded scenes from the riot on his mobile telephone.

Clifton's conduct on January 6 was worse than Fuller's. Clifton entered the Capitol building about seven minutes after it had been breached by force, spent 30 minutes inside the Capitol building and made his way to the Crypt where other rioters had just overwhelmed a line of officers. Clifton then traveled to Visitor's Center, where he witnessed a confrontation between rioters and police officers.

Clifton pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). This Court sentenced Clifton to 21 days' incarceration and 36 months' probation.

3. United States v. Anthony Richard Moat, *1:21-cr-375-TSC*

*United States v. Anthony Richard Moat*, 1:21-cr-375-TSC, is similarly situated to Fuller, in that Moat, like Fuller, witnessed a chaotic scene on Capitol Grounds, including the firing of tear gas by police against the rioters, the rioters' storming of barricades, and rioters using force against police officers. Moat nevertheless continued towards the Capitol, recorded the events on his phone, entered the Capitol through the Senate Wing Door despite knowing he was not allowed inside, and did not express remorse for his actions. Unlike Fuller, Moat deleted his social media to obstruct the investigation of his actions; however, Moat did not lie to the FBI about his involvement in the riot.

Moat pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G). On January 27, 2023, Judge Chutkan sentenced Moat to ten days' incarceration and 36 months' probation.

4. United States v. Jeremy Grace, *1:21-cr-00492-RDM*

*United States v. Jeremy Grace*, 1:21-cr-004920-RDM, bears some important similarities to this case. Similarly to Fuller, Grace lied to the FBI about whether he was in the Capitol building, climbed through a broken window, took videos of the riot, and bragged about making it into the Capitol. Unlike Fuller, Grace entered the Capitol relatively early in the breach, at 2:23 p.m., and tried to profit financially from his participation in the January 6 riot. On a guilty plea to a single count of violating 18 U.S.C. § 1752(a)(1), Judge Moss sentenced Grace to 21 days' incarceration and twelve months' supervised release.

**V.      Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639

F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[7] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Fuller must pay $500 in restitution, which reflects in part the role Fuller played in the riot on January 6.[8] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Fuller's restitution payment must be made to the Clerk of the Court,

---

[7] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[8] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

18

who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 108.

## VI. Fine

Fuller's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, Fuller's financial assets set forth in the PSR suggest that he is unable, and is unlikely to become able, to pay a fine.  PSR ¶ 83-88.

**VII.    Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Fuller's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ John Oxenreiter*
Assistant United States Attorney
New York Bar Reg. No. 5511597
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
202-809-3505
john.oxenreiter@usdoj.gov